Bradley J. Luck
Isaac M. Kantor
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Telephone (406) 523-2500
Telefax (406) 523-2595
bjluck@garlington.com
imkantor@garlington.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| AMERICAN HALLMARK INSURANCE COMPANY OF TEXAS,<br><br>Plaintiff,<br><br>v.<br><br>ULTRA GRAPHICS, LLC, EMILY E. JONES, and JACOB L. EATON,<br><br>Defendants. | COMPLAINT FOR DECLARATORY JUDGMENT AND DEMAND FOR JURY TRIAL |

Plaintiff American Hallmark Insurance Company of Texas ("American Hallmark") brings this Declaratory Judgment Action under 28 U.S.C. § 2201 and Montana Code Annotated §§ 27-8-201 to 27-8-203, alleging as follows:

1. This is a claim for relief brought by American Hallmark under the Uniform Declaratory Judgments Act seeking a declaration from this Court that

2337914                                                                                                                1

American Hallmark does not have any obligation to defend or indemnify Ultra Graphics, LLC ("Ultra Graphics"), Emily E. Jones ("Jones") and/or Jacob L. Eaton ("Eaton") (collectively "Defendants") under the applicable policy of insurance between American Hallmark and Ultra Graphics.

**PARTIES, JURISDICTION AND VENUE**

2. Jurisdiction is proper in this Court under 28 U.S.C. § 1332, because the matter in controversy exceeds $75,000.00 and the parties are citizens of different states. *See* ¶ 12, below.

3. Venue is proper in the Billings Division of the District of Montana as all Defendants reside in Yellowstone County, Montana, the actions of Defendants at issue occurred in Yellowstone County, and the place of performance for the insurance contract at issue is Yellowstone County.

4. Plaintiff American Hallmark is an insurance company authorized to do business in Montana. American Hallmark is a corporation incorporated under the laws of the State of Nevada, with its principal place of business in the State of Texas.

5. At all relevant times, Ultra Graphics was a Montana Limited Liability Company, with its principal place of business in Yellowstone County, Montana.

6. Jones and Eaton are individuals, who on information and belief, resided in Yellowstone County at all relevant times.

7.     There is an actual justiciable controversy between the parties concerning their rights and obligations under the applicable insurance policy.

## GENERAL ALLEGATIONS

8.     American Hallmark issued Policy Number 44PB476478-04/000 to named insureds AlphaGraphics, Ultra Graphics LLC, The Political Co. LLC, and WDRP MGMT Co. LLC, with policy period from 10/1/2016 to 10/1/2017. Policy No. 44PB476478-04/000 ("Policy"), attached as Ex. A. This Policy was a renewal of a prior policy, Policy No. 44PB476478-03/000.

9.     The parties' rights and obligations under the policy, specifically whether American Hallmark has a duty to defend or indemnify Defendants on claims alleged against them in the underlying action, is the subject of this action.

**A.     The Underlying Action**

10.    On August 24, 2017, AlphaGraphics, Inc. ("AGI"), filed a Complaint in the United States District Court, District of Utah, Central Division, naming as Defendants Ultra Graphics, Eaton, an individual, and Jones, an individual. Verified Compl. TRO, Inj. Relief, & Damages, Aug. 24, 2017 ("Compl."), attached as Ex. B.

11.    The allegations of the Complaint can be summarized as follows: AGI is a Delaware corporation with its principal place of business in Salt Lake City, Utah. Ultra Graphics is a Montana LLC, with its principal place of business in

Billings, Montana.  Eaton and Jones reside in Billings and are the sole members and owners of Ultra Graphics.  Compl. ¶¶ 2-6.

12.	The Complaint is verified, and alleges that several bases for federal jurisdiction exist, including diversity jurisdiction under 28 U.S.C. § 1332.  Compl. ¶ 7.

13.	AGI is the franchisor of the AlphaGraphics franchise system.  AGI has developed a business system allowing its franchisees to operate business centers offering customized print and marketing solutions for businesses and individuals.  AGI makes the AlphaGraphics Business System available to franchises through franchise agreements.  The franchisees offer services through business centers using the AlphaGraphics trademark and related logos and marks, all of which are owned by AGI.  The AlphaGraphics marks are well known and have significant value to AGI.  Compl. ¶¶ 9-15.  The AlphaGraphics marks are registered in the U.S. Patent and Trademark office.  Compl. ¶¶ 16-19.

14.	Ultra Graphics entered a franchise agreement with AGI on September 20, 2012, allowing it to own and operate an AlphaGraphics business center for a period of 15 years.  Compl. ¶ 20.  At the same time the franchise agreement was executed, Eaton entered a personal guarantee to AGI in relation to the franchise agreement, including joint and several liability.  Compl. ¶ 22.  On July 2, 2015, Ultra Graphics and AGI entered an Amendment to the franchise

agreement. Compl. ¶ 23.

15. On September 30, 2016, Ultra Graphics, Eaton, and Jones entered an assignment and consent agreement with AGI and another individual, Dustin Frost ("Frost"), under which Eaton affirmed that his personal guarantee remained in full force and effect. Compl. ¶ 24.

16. Also on September 30, 2016, Jones entered into a sales agreement with Frost under which Frost sold his 50% interest in Ultra Graphics to Jones. At the same time Eaton and Jones entered a second guarantee under which both personally guaranteed to AGI that Ultra Graphics would perform its obligations under the franchise agreement and each agreed to be individually bound and personally liable for any breach, and jointly and severally liable with Ultra Graphics. Compl. ¶¶ 25-26.

17. The Defendants agreed to many obligations under the franchise agreement, including that their right to use the AlphaGraphics marks was derived only from the franchise agreement and subject to that agreement and AGI's rules. Defendants agreed not to use the AlphaGraphics marks in unauthorized ways, and that their use of certain confidential information to operate any other business would be an unfair method of competition. Compl. ¶¶ 27-31. Defendants agreed not to engage in any competitive business in any way during the term of the franchise agreement, and that they were obligated to disclose certain materials to

AGI, and that certain materials were owned by AGI, and AGI was assigned the ownership of other materials, including customer information.  Defendants agreed that if the franchise agreement was terminated under certain provisions, copies of all artwork, files, customer information, and other materials in any form, as well as other data, would be delivered to AGI.  Compl. ¶¶ 32-36.

18.     Ultra Graphics had an early termination option in the franchise agreement.  Defendants sent an email on June 19, 2017, purporting to give notice of such termination effective September 20, 2017.  Allegedly, at the time of the Complaint, the franchise agreement was still in effect and Defendants had not fulfilled their post-termination obligations.  Compl. ¶¶ 43-50.

19.     It is further alleged Defendants engaged in conduct giving rise to breach of contract and trademark infringement.  On August 18, 2017, AGI requested copies of customer artwork and certain data, as it was entitled to do under the franchise agreement.  Defendants failed to provide this information.  Compl. ¶¶ 51-56.  In addition, Defendants set up a competing printing business, Ultra Graphics, in breach of the franchise agreement.  The Ultra Graphics website repeatedly displayed AlphaGraphics marks.  Compl. ¶¶ 57-63.  Defendants also notified other AGI franchises of their intent to leave, interfering with AGI's contractual relationships.

20.     AGI notified Defendants of the breach on August 16, 2017, and made

demand that Defendants stop their breach and provide copies of customer artwork and certain data on August 18, 2017.  Compl. ¶¶ 65-66.  Eaton responded in an email denying that Defendants were operating a competing business, and indicating that the copies of customer artwork and data were not due until September 20, 2017.  Compl. ¶ 66.

21.	The Complaint brings several counts:  Count I, against all Defendants, is for federal trademark infringement.  It alleges that Defendants' use of the AlphaGraphics marks in connection with a competing business, and even in an attempt to promote a competing business, are a "willful and intentional" infringement on the AlphaGraphics marks in violation of the Lanham Act.  Compl. ¶¶ 71-81.

22.	Count II, also brought against all Defendants, is for unfair competition, and alleges that Defendants' use of the AlphaGraphics marks, in association with advertisements for their competing Ultra Graphics business, is an unfair competition and misappropriation of AGI's marks, customers, and customer goodwill.  Compl. ¶¶ 82-92.

23.	Count III, breach of contract against all Defendants, is brought for breach of the franchise agreement.  Compl. ¶¶ 93-96.

24.	Count IV, breach of contract-non-compete, alleges all Defendants

//

breached the non-compete provisions of the franchise agreement. Compl. ¶¶ 97-106.

25. Count V is for breach of contract related to franchisee materials, customer artwork, and "Printsmith" data. It is brought against all Defendants for failure to disclose and provide customer and franchisee materials and data. Compl. ¶¶ 107-117.

26. Count VI is for tortious interference with contracts and business relations. It is brought only against Eaton and Jones and alleges that they intentionally interfered with AGI's contractual and business relationship with Ultra Graphics. Compl. ¶¶ 118-130.

27. Finally, Count VII, is for breach of contract – attorneys' fees, against all Defendants. Compl. ¶¶ 131-133.

28. The final demand for relief includes a temporary restraining order, preliminary injunction, permanent injunction, an order requiring Defendants to provide copies of customer artwork and data, and for damages, jointly and severally, against all Defendants.

**B.    Relevant Policy Provisions**

29. The policy contains certain definitions and provisions which limit or exclude coverage to Defendants in the underlying action. The commercial advantage policy provides business liability coverage, as follows:

**SECTION II – LIABILITY**

**A.    Coverages**

    **1.    Business Liability**

        **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply.

        . . .

        **b.**    This insurance applies:

            **(1)**    To "bodily injury" and "property damage" only if:

                **(a)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

            . . .

            **(2)**    To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

Policy, Ex. A-173.

30. The business liability coverage also contains a number of exclusions, including the following:

**B.  Exclusions**

  **1.  Applicable To Business Liability Coverage**

. . .

  **d.  Contractual Liability**

  "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

  **(1)**  That the insured would have in the absence of the contract or agreement; or

  **(2)**  Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

. . .

  **f.  Damage To Impaired Property Or Property Not Physically Injured**

  "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    **(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

    **(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

. . .

    **o.**    **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

. . .

    **r.**    **Personal And Advertising Injury**

"Personal and advertising injury":

    **(1)**    Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

. . .

    **(5)**    Arising out of breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

. . .

      **(12)** Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

      However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

Policy, Ex. A-176, 178-179.

31. Finally, the policy also contains several relevant definitions:

   1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segment about your goods, products or services for the purpose of attracting customers or supporters.

   . . .

   15. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

   16. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   . . .

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

   . . .

      19.    "Property damage" means:

          a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

          b.    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

      For the purposes of this insurance, electronic data is not tangible property.

      As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Policy, Ex. A-185, 187-188.

      32.    Other provisions, conditions, or exclusions in the policy may also limit or preclude American Hallmark's obligations under the circumstances presented.

      33.    American Hallmark issued a reservation of rights letter to Ultra Graphics, Jones, and Eaton, under which it agreed to provide a defense for the Defendants and in which it expressly reserved its rights to recoup defense costs if it was determined there is no duty to defend.  *See* Ex. C:  Ltr. Bradley J. Luck to Jones & Eaton, Sept. 5, 2017.

## COUNT ONE – DECLARATORY JUDGMENT

34. American Hallmark re-pleads and incorporates by reference Paragraphs 1-33, above.

35. American Hallmark requests the Court to determine the rights and responsibilities of the Parties under the policy pursuant to Montana Code Annotated § 27-8-202 and 28 U.S.C. § 2201.

36. Specifically, it appears there is no coverage under the policy for Ultra Graphics, Jones, and/or Eaton, and no duty to defend Ultra Graphics, Jones, and/or Eaton, because:

   a. The Complaint does not allege "property damage" caused by an "occurrence";

   b. Any property damage coverage is excluded by Exclusions d, f, and o;

   c. The Complaint does not allege "personal and advertising injury"; and

   d. Any "personal and advertising injury" coverage is excluded by Exclusion r.

Other facts and circumstances documented during this proceeding may further limit American Hallmark's duty to defend or indemnify Ultra Graphics, Jones, and/or Eaton.

37. Determination of these coverage issues will benefit all parties to this action by providing relief from uncertainty and insecurity with respect to their

rights and status under the policy.

WHEREFORE, American Hallmark requests the following relief:

1. That this Court fully and finally declare and adjudge the rights of the Parties under the policy and Montana law pursuant to Montana Code Annotated §§ 27-8-201 to 27-8-203, and 28 U.S.C. § 2201;

2. For its costs of suit;

3. For recoupment of its defense costs in the underlying case; and

4. For such other relief as the Court deems just.

## DEMAND FOR JURY TRIAL

American Hallmark demands trial by jury of all issues so triable.

DATED this 26th day of October, 2017.

/s/ Bradley J. Luck
Attorneys for Plaintiff